## S. E. WATSON v. W. B. AIKEN.

(Case No. 1105.)

1. USURY.— The constitutional provision which declared all contracts for interest in excess of twelve per cent. to be usurious, and which required the legislature at its first session to provide for appropriate pains and penalties to prevent and punish usury, rendered illegal

any contract made after its adoption, and before legislative enactment on the subject, for a rate of interest more than twelve per cent. On such a contract no interest can be collected.

2. USURY.— To cover a usurious contract, A received from B two notes for a loan of money, one for the sum loaned, bearing twelve per cent. interest, and the other for the usurious interest, and a judgment in favor of B was also transferred to secure the loan. Under that judgment land was sold at sheriff's sale and purchased by A, who conveyed it to B, who then executed in favor of A a deed of trust to the land to secure the amount due according to the original usurious contract, which was evidenced by a new note. This land was sold under the deed of trust, when A again purchased it, after B had tendered him the amount due on the debt, exclusive of the usurious interest. In a suit brought by B to cancel the trust deed and remove cloud from title, renewing the tender, *held*,

(1) The defense of usury was available against the new note, to secure which the trust deed was given.

(2) The device to cover up the usury was unavailing.

(3) The trust sale, being made after a tender of the amount due exclusive of interest, was without authority.

3. PLEADING USURY IN TRESPASS TO TRY TITLE.— A defendant pleaded, in a suit to cancel a trust deed, title in himself under a trust sale and asking affirmative relief, to which the plaintiff pleaded *not guilty*, after taking a non-suit in the original action: *Held*,

(1) The original plaintiff, under his plea of not guilty to the cross-bill, could show that the trust sale was made to enforce, after tender of the money legally due, a usurious contract without specially pleading usury.

APPEAL from Red River. Tried below before the Hon. Reuben R. Gaines.

Suit brought by appellant S. E. Watson against W. B. Aiken, on the 27th day of October, 1880, to cancel a trustee's deed from A. M. Taylor, trustee, to Aiken for a tract of one thousand four hundred and thirty-eight acres of land in Red River county, surveyed for Abner McKenzie, to remove clouds from plaintiff Watson's title, for general relief, etc.

The grounds alleged in the petition are as follows:

1st. That on the 27th day of May, 1876, Watson borrowed from Aiken $3,000; that Aiken charged, and Wat-

son agreed to pay, eighteen per cent. per annum for the money; that Watson executed to Aiken two notes for the money, both dated the 27th day of May, 1876, due in six months, one for the sum of $3,000, and one for the sum of $90, the first bearing interest from date at twelve per cent. per annum; that the note for $90 was given for the excess of interest over twelve per cent.; that these notes were secured by M. Watson as security, and the transfer of a judgment in favor of M. Watson, Executor, etc., *v.* Lucy A. Hopkins, Executrix, etc., *et al.*, for about $15,000, which had been before that time transferred by M. Watson, executor, etc., to S. E. Watson, the appellant; said judgment enforcing a vendor's lien upon the land in controversy in this suit.

2d. That this rate of interest — eighteen per cent.— was carried with all the subsequent transactions between the parties.

3d. That the land in controversy was sold under an order of sale by the sheriff, and purchased by Aiken, and a deed made to Aiken; Aiken made a deed to Watson, and Watson made a deed of trust to A. M. Taylor as trustee; that this arrangement was made in pursuance of an agreement between Aiken and Watson, and was intended to change the form of the security, and not as a *bona fide* sale.

4th. That Watson paid Aiken before the trustee's sale the sum of $2,000 in cash.

5th. That on the day of the trustee's sale, Watson tendered Aiken, and also the trustee Taylor before the sale, $1,000 in legal tender notes, which was refused.

6th. That the contract was usurious, illegal and void; specially prohibited by sec. 11, art. 16 of the constitution of 1875.

Defendant answered, first, general demurrer; second, general denial; third, specially denying usury in the con-

tract; fourth, specially denying any agreement for sale of land; fifth, specially setting up a *bona fide* sale under a settlement and a new contract; sixth, estoppel; seventh, denying a tender; and eighth, filing a cross-bill in the usual form of trespass to try title, with usual prayer for writs of possession, for rents, etc., and for general and special relief.

On the 24th day of May, 1881, Watson took a non-suit. At the same time appellee Aiken asked for affirmative relief on his cross-bill, which was substantially a proceeding in trespass to try title. At the same time appellant answered appellee's cross-bill. First, general demurrer; second, not guilty; third, tender of $1,000; fourth, improvements, repairs, etc., as offsets against rents.

Judgment was rendered in favor of appellee for the recovery of the land; writ of possession awarded, for rents and costs.

The evidence showed:

1st. That interest was charged and agreed to be paid at the rate of eighteen per cent. per annum.

2d. That this rate of interest (eighteen per cent. per annum) was carried into the several arrangements.

3d. The evidence indicated that the sheriff's sale was made in pursuance of an agreement between Watson and Aiken, and was intended *simply* to change the form of the security, and was not a *bona fide* sale. Watson swore that it was agreed between him and Aiken that the land should be sold; that Aiken should buy it in at a nominal price to save cost in the nature of commissions; that Aiken after the sale should convey the land to him, and he would execute a deed of trust to secure payment, etc.; and that the arrangement was intended, not to vest the title to the land in Aiken, but to change the form of the security; that the $500 bid was not paid nor credited, but the full amount was cancelled with the settlement.

W. J. McDonald testified that he heard the arrange-

ment between Watson and Aiken, and prepared some of the papers in regard to the settlement after the sale, and heard both Aiken and Watson state the character of the transaction; and both stated in his presence and in the presence of each other, that the sale was intended to change the form of the security only. Watson and Aiken both stated, before and after the sale, that this was the object in view.

Aiken stated that the sale was made in good faith; that Watson tried to get him to agree upon a sale simply to change the form of the security, and that he refused to do so; that his bid of $500 at the sale was included in the settlements made after the sale.

The evidence showed that Watson paid Aiken $2,000 in cash, and tendered him $1,000 in legal tender notes before the trustee's sale. It also showed that on the day of the sheriff's sale Watson paid Aiken $1,000 and gave his note, secured by deed of trust, to Taylor for $3,400.75.

*M. L. Sims*, for appellant.

*Hale & Scott* and *Connor & Connor*, for appellee.

I. Appellee Aiken was entitled to either eight or twelve per cent. interest on his $3,000, loaned money; and the payment of the $2,000, and the tender of $1,000, was not sufficient to discharge the debt or to recover the land; and the act of the legislature passed subsequently to the date of the original contract would not affect his rights.

II. The sale of the land by Aiken to Watson was a new contract; and Watson is estopped to set up usury arising out of the original contract; and by reason of which contract of Watson, Aiken was induced to change his condition. De Wolf *v.* Johnson, 10 Wheat., 368; 1 Black (U. S.), 115; Tiffany *v.* Boatman's Ins. Co., 18 Wall., 376; Graeme *v.* Adams, 14 Am., 130; Bigelow on Estoppel, pp. 475, 503, 511, 458 and 492. Appellee as-

signs one error which he respectfully asks the honorable
supreme court to pass upon, though not necessary to a
decision of this case in the event of an affirmance. It is
as follows: The judgment and ruling of the court below
in permitting the appellant Watson to introduce evidence
tending to show usury, when he had no pleading in the
case upon which to base it, except the plea of not guilty,
and because there was no plea under oath filed. See
R. S., arts. 2981, 1265 (subdivision 12); id., art. 1196;
Ayers v. Duprey, 27 Tex., 604, 605.

GOULD, CHIEF JUSTICE.— On May 27, 1876, Watson bor-
rowed of Aiken $3,000, agreeing to pay interest at the
rate of eighteen per cent. per annum. The constitution
which took effect in April of that year provided that in
the absence of contract, the rate of interest should not
exceed eight per cent. per annum, and authorized parties
by contract to "agree upon any rate not to exceed twelve
per cent. per annum." It then proceeds thus: "All in-
terest charged above this last named rate shall be deemed
usurious, and the legislature shall at its first session pro-
vide appropriate pains and penalties to prevent and pun-
ish usury." Art. 16, sec. 11.

On August 21, 1876, at the first session of the legisla-
ture under this constitution, an "act regulating interest"
was passed, the first and second sections of which refer
to and enforce the constitutional provision as to the rates
of interest. The third section is as follows: "All con-
tracts or instruments of writing, whatsoever, which may
in any wise, directly or indirectly, violate the foregoing
provisions of this act, by stipulating for, allowing or re-
ceiving a greater premium or rate of interest than twelve
per centum per annum, for the loan, payment or delivery
of any money, goods, wares, merchandise, bonds, notes
of hand, or any commodity, shall be void and of no effect
for the whole rate of interest so charged, stipulated or

agreed to be paid and received, but the principal sum of money, or the value of the goods, wares, merchandise, bonds, notes of hand or commodity, may be received and recovered; provided, however, that no evidence of usurious interest shall be received on the trial of such cases, unless the same shall be specially pleaded and verified by the affidavit of the party wishing to avail himself of the provisions of this act." Laws of 1876, p. 228.

Was Aiken legally entitled to any interest? Was Watson's debt discharged by the payment or tender of the sum borrowed?

In our opinion Aiken occupies no more favorable position than if his loan had been made after the act of the legislature took effect. When his loan was made, usury was illegal by virtue of the constitutional prohibition; and although it was left to the legislature to "prescribe pains and penalties to prevent and punish usury," a contract for usurious interest was a contract in violation of law. In the case of Bank of U. S. *v.* Owens, the charter of the bank forbid it to take interest at more than the rate of six per cent., and although there was no law declaring the effect of taking interest at a greater rate, such a contract was held void. 2 Peters, 527. Our opinion is that Aiken needed the aid of the subsequent act of the legislature to give him any legal rights under his contract, and that indeed it is for his benefit that the contract be regarded as if the penalty subsequently prescribed had already been designated in the constitution. In a suit on that contract, the defense of usury being properly made, his recovery would have been limited to the principal sum of money loaned.

2. The evidence clearly shows that the alleged new contract was but a device to cover the usury. A simple calculation demonstrates that the second note was for the amount of the loan, with eighteen per cent. interest up to the pretended purchase at sheriff's sale, less the payment

then made, calculating interest, at the same rate, on the balance, up to the maturity of the new note. We are clearly of opinion that the defense of usury was available against that new note, and that if, at the time of the sale under the deed of trust given to secure that note, Watson had paid $2,000 and then tendered another $1,000, claiming the benefit of the statute as to usury, then the sale was without authority. Fiedler *v.* Darrin, 50 N. Y., 437.

3. But the question remains, presented in a cross-assignment of errors by appellee, did the court err in admitting evidence to show usury, this being, as tried, an action of trespass to try title by Aiken, and the only pleadings by Watson being, 1st, general demurrer; 2d, not guilty; 3d, tender of $1,000; 4th, improvements and offsets? If this had been a suit on the original contract, the statute is plainly applicable requiring the defense "that the contract sued upon is usurious" to be specially pleaded and to be verified by affidavit. The proviso to section 3 of the act regulating interest passed in 1876 is carried into the Revised Statutes in a separate article (R. S., art. 2981). The only changes are, that instead of the expression in the original act, "on the trial of such causes," we have in the Revised Statutes the expression, "on the trial of any case," and instead of concluding, "wishing to avail himself of the provisions of this act," it reads, "wishing to avail himself of such defense." These changes seem designed simply to adapt the proviso to its place as a separate article in the Revised Statutes. The Revised Statutes, in prescribing, under the head of "Practice in the district courts," that an answer setting up certain matters shall be verified by affidavit, specifies, amongst others, "12. That the contract sued on is usurious." R. S., art. 1265. Although it may be plausibly urged that the statute in each case contemplates a suit for money on a contract, and that its requirements were made in pursuance of the policy which exacts a sworn answer in order to admit evidence impeaching the consideration of

a written instrument sued on, or evidence impeaching the justness of an account sued on and supported by affidavit, the fact is potent that the language of the statute is broad enough to exclude evidence of usury in "any case," where it is sought to be made available as a defense, or at least in "such causes" as are founded on an instrument of writing, which even indirectly violates the law as to legal interest. This, however, is an action of trespass to try title, and even if that action in this case could with any propriety be said to be an action on the deed made by the trustee to Aiken, there are special provisions also regulating the rights of a defendant in trespass to try title under the plea of not guilty. Article 4792, in pursuance of what has long been the law in this state, says: "The defendant in such action may file only the plea of 'not guilty.'" . . . Art. 4793. "Under such plea of 'not guilty' the defendant may give in evidence any lawful defense to the action, except the defense of limitation, which shall be specially pleaded."

The exception does not embrace the defense of usury, and we cannot presume that the omission was an oversight. Construing these various statutory provisions together, we are of opinion that in this action of trespass to try title it was competent for Watson, under his plea of not guilty, to show that the trust sale under which Aiken claimed was invalid, because, by reason of the usurious interest stipulated for, and by reason of the payments made and tendered at the time thereof, the sale was made without authority.

The court did not err in receiving evidence to show the usury, but under the evidence did err in rendering judgment for Aiken.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 20, 1881.]