## HEMPHILL vs. WATSON.

SUPREME COURT, GALVESTON TERM, 1884.

*Usury—Constitutional Law.* Article XVI, section 11, of the State constitution denounced all interest above 12 per cent as usurious, and charged the Legislature with the duty, at its first session of providing appropriate pains and penalties to prevent and punish usury. *Held*, that the section alluded to made usury a *quasi* offense; defined what should constitute the offednse; was prohibitory in its nature, and self-executing so far as to render all contracts of the kind denounced immediately illegal, and did not depend for its present operation upon the subsequent act of the Legislature, passed in pursuance thereof, denouncing the penalty. Hence a contract entered into subsequent to the adoption of the constitutional enactment, but prior to the passage of the act of the Legislature, denouncing the penalty, was usurious in character, and illegal, and subject to the penalties finally imposed. See the opinion in extenso on the question.

*Same—Penalty.* The penalty imposed upon an usurious contract is the forfeiture of both legal and illegal interest, but by express provision of the statute the principal sum of money, or the value of the subject matter of the contract may be recovered.

*Same—Remedy—Case Stated.* In this case the mortgage upon the land contained a power of sale, and the mortgagee upon whom the power was conferred, appears to have strictly pursued the powers granted him, and no objection is urged to the sale except that the mortgage, under which it was made, was tainted with usury. *Held*, that an action upon the debt was maintainable to the extent of the principal debt; that to the same extent the mortgage could have been foreclosed, but that such foreclosure could have been defeated by a payment or tender on the part of the mortgagor of the principal. In substance, had the mortgagee proceeded to sell outside of court, under the power conferred by the mortgage, the mortgagor could have enjoined the sale only by a payment or tender of the principal sum due. In default of such tender or payment the sale would be valid, and pass a good title. It was too late after the power of sale was executed, a purchase of the land at the sale was made, and the debt satisfied and deed executed, to pray a cancellation of the deed, even upon a tender of the principal of the debt.

*Same.* The remedy in cases like the present is to pay or offer to pay what is legally due before sale; then if sale proceeds, for the usurious balance, can be set aside as against the mortgagor or claimants under him.

Appeal fron Parker County.

*Eblin* & *Robertson* for appellant.

*E. P. Nicholson* for appellee.

Opinion by Willie, C. J.

The first question in this case is : Was the note which Hemphill made to Watson and secured by mortgage upon the the land in controversy tainted with usury ? It was executed July 21, 1876, subsequent to the adoption of our present constitution, but previous to

the passage of the article of August 21, 1876, which regulated inter-est and prescribed a penalty for the prevention and punishment of usury. Article XVI, section 11 of the constitution denounced all interest above twelve per cent as usurous, and charged the Legis-ture with the duty, at its first session, of providing appropriate pains and penalties to prevent and punnish usury, and it was in obedience to this mandate of the constitutiön that the above act of August 21, 1876, was passed.

It is clear that if the note and mortgage had been made subse-quent to the date of the act, the contract would have been usurous, and nothing but the principal could have been recovered. But it is contended that previous to the passage of that act there was a law against usury in force in our State, the constitution of 1870, and all laws passed whilst it was in force, permitting interest at any rate to be agreed upon between the parties to a contract. In this view we cannot concur.

The section of the constitution above alluded to made many a *quasi* offense, which the Legislature was charged with suppressing and punishing. It even defined what should amount to the offense of usury, declaring such offense to consist in charging interest at a greater rate than twelve per cent per annum. This provision is pro-hibitory in its nature, and self executing so far as to render all con-tracts of the kind denounced immediately illegal; and it left to the Legislature the only remaining duty of saying what penalties should be imposed upon offenders against this clause of the consitution. Cooley on Const. Lim., 100 and note; Law and People, 87 Ill. 385.

A constitutional provision denying the Legislature power to pass laws of a certain character is prohibitory of such acts as these laws would authorize. For instance a provision that the Legislature should not authorize lotteries is held to be in itself a prohibition of lotteries. Bass' vs. Prohville, Meigs. 421; Yerger vs. Rains, 4 Humph. 259.

And it is said that "any constitutional provision is self-executing to this extent : that everything done in violation of it is void." Brun vs. Williamson, 4 Hump., 259. These principles are too well settled to require further argument to support them. Accordingly usurious contracts of the kind mentioned in our constitution were as abso-lutely prohibited and illegal by force of the 11th section above men-tioned, as they could have been when afterwards denounced and

punished by the statute of 1876. Parties entering into such contracts did so with full knowledge that they were doing a prohibited act, for which they might incur penalties if the Legislature should discharge its duty and prescibe them. They placed themselves at the mercy of the Legislature, and accordingly ran all the risks of punishment that, within constitutional limits, could be assessed against them for making a contract denounced by the organic law. The Legislature merely rendered such contracts void both as to legal and illegal interest, and the creditor cannot complain that he has forfeited thus much of a debt arising upon a contract entered into in violation of the constitution.

This precise question was decided in accordance with the conclusion to which we have arrived in Watson vs. Aiken, 55 Texas, 536, but the present appeal comes to us under circumstances which require a reconsideration of that case. In reviewing it we fully concur in the opinion of our predecessors, and merely suggest the above views in addition to the arguments and authorities made and cited by the court in making the decision.

The next question is : can the appellant recover the land sold by virtue of the usurious mortgage under the circumstances stated in his petition ?

The mortgage contained a power of sale, and the mortgagee upon whom this power was conferred appears to have strictly pursued the powers granted him, and there is no objection urged to the sale except that the mortgage under which it was made was tainted with usury.

We have seen that the penalty prescribed againrt usurious contracts is a forfeiture of both legal and illegal interest, but by the express provisions of the statute the principal sum of money or the value of the goods, lands, etc., paid or delivered to the debtor under such contracts, may be recovered. Hence the mortgage secured the principal sum loaned by Watson to Aiker, viz, $300, and it could be enforced for at least that amount. Had Watson brought suit on the debt and to foreclose the mortgage, and Hemphill had pleaded usury, the judgment of the court would certainly have been against Hemphill for the principal sum, and the mortgage would have been foreclosed to that extent, and if he had tendered that sum he would have defeated the foreclosure.

Had Watson proceeded to sell outside of court under the power

given him in the instrument, Hemphill could not have enjoined the sale except upon payment or tender of the principal sum due. Foreclosed as the mortgage was, the rights and duties of the parties were not changed. The sale could have been defeated or rendered void by a tender of the principal sum due; if this was not tendered the sale would be valid and the purchaser obtain a good title.

After the power of sale contained in the mortgage had been executed, and a purchase of the land had been made at the sale, and a deed executed, and the debt satisfied, it was too late to pray a cancellation of the mortgage and a recovery of the land from the purchaser even upon a tender of what was legally due upon the debt. A different view might possibly prevail did the statute forfeit the entire debt, both principal and interest, and such is the ruling in at least one of the States where the law is to the above effect, and the mortgagee becomes the purchaser. Jackson vs. Dominick, 14 Johns. 435.

The entire debt being illegal and forfeited and the mortgage being void, and the mortgagee having of course full knowledge of these facts, they can form no basis of a legal sale and a valid title if the mortgagee becomes the purchaser. On the contrary it is held by the supreme court of Massachusetts that after foreclosure of a mortgage on land given to secure a debt illegal *in toto,* viz : one contracted for the purchase of intoxicating liquors the mortgager could not recover the land from the mortgagee who had purchased at the sale. McLaughlin vs. Casiman, 99 Mass., 4. ·

Certainly when a part of the mortgage debt is cancelled at law and part not, and the two can be separated, a sale under the mortgage will be sustained. 1 Jones on Mort., Sec. 620.

This is the case with all usurious debts under our statute, and the sale in the present instance must be upheld for at least the principal sum due upon the debt.

The remedy for the mortgagor is to pay or offer to pay what is legally due before sale made, then if it proceeds, for the usurous balance it cau be set aside as against the morrgagor and parties claiming under him with notice.

The petition in this case to which a demurrer was sustained contained no allegations of such offer of payment, but merely states that the appellant forbade the sale. Upon what grounds the sale was forbidden is not stated, and we cannot presume that it was an

account of payment or tender of the interest without supplying for the pleader, what, if true, was his duty to allege. We think the petition showed no right in the appellant to cancel the deed to appellee and recover the land sued for, and the demurrer was properly sustained, and the judgment below is affirmed.