### WOOD et al. v. EASTLAND BUILDING & LOAN ASS'N.
#### No. 1309.

Court of Civil Appeals of Texas. Eastland.
Sept. 21, 1934.

Rehearing Denied Oct. 19, 1934.

Conner & Conner, of Eastland, for appellants.

Turner, Seaberry & Springer, of Eastland, for appellee.

LESLIE, Justice.

The Eastland Building & Loan Association instituted this suit against H. C. Overbey, Will Wood and wife, Elma Wood, and J. C. Day, to recover title and possession of lot 31, the north ½ of lot 29, in block B, of Tindall's subdivision of block 37, Daugherty addition to the city of Eastland, Tex. The trial was before the court and jury, and upon answer to special issues, judgment was rendered in favor of the plaintiff against Overbey for $1,718.10 with interest, and against Wood and wife and Overbey for the title and possession of the property, and $142.50 damages, etc. No recovery was had against Day. Wood and wife alone appeal. Errors in the trial and judgment are predicated upon fifteen propositions of law.

The Loan Association brought the suit in the form of trespass to try title in the first count, and specially alleged its title in the following counts. The special allegations asserted title through sale and purchase under and by virtue of a deed of trust and trustee's deed. The defendant Will Wood was the common source of title. Upon the record, he and his wife had conveyed the property to one H. C. Overbey for the recited consideration of $3,000, and said Overbey in the purchase of the property executed and delivered to the association a deed of trust to secure a loan for $2,000, or a substantial part thereof which the association had extended to Over-

bey upon his application in writing therefor. Later, Overbey defaulted in his payments on the loan, and in accordance with the terms of the deed of trust the trustee advertised and sold the property, which the association bid in for the sum of $500. The trustee executed the deed in due form to the appellee herein. As noted, the suit was to obtain the title and possession from Wood and Overbey, the former having remained in possession.

The appellants, Wood and wife, alleged they had at all times during the transaction in question been in possession of the property, occupying same as their homestead, and they assert title to the property as such. They further allege that the deed from themselves to Overbey was a simulated affair, fictitious in its nature, and evidenced a mere pretended sale of their homestead for the sole purpose of obtaining a loan through the association upon the property in suit. They further contend that the Loan Association, through its officers and agents, were fully aware of the simulated nature of the transaction and advanced the loan with full knowledge thereof. That the purported deed to Overbey, and the deed of trust executed by him, were void as conveyances of their homestead. That Overbey was merely a pretended purchaser, and not one in fact.

The Eastland Building & Loan Association replies to the above contention:

(1) That when the loan was advanced to H. C. Overbey he was in fact the owner of the property; that he executed and delivered to it a deed of trust to secure the loan, and thereafter defaulted in his payments; that the trustee on request advertised and sold the property at public sale to the association as the highest bidder, and executed to it a deed thereto, through which it is now claiming title to the property; that it has at all times been without knowledge or notice that H. C. Overbey was other than the true owner of the property at the time it made the loan and accepted the deed of trust as security therefor.

(2) That the proceeds of the loan to the extent of about $842.95 were used to pay off state, county, city, and school taxes against the property, owed primarily by the appellants at the time they conveyed, or were to convey the property to the said Overbey; that said sums were secured by valid tax liens in favor of the said governmental divisions; that the loan was in part procured and used for the purpose of paying said taxes and clearing the title of such incumbrances;

that the payment of such amounts and the lifting of such liens were a prerequisite to the transfer of such property and the mortgaging of the same to appellee. That in law and equity, and as per express agreement, the plaintiff Eastland Building & Loan Association having advanced the funds that paid said taxes became subrogated to all the liens securing the payment of said taxes; that said liens were by operation of law carried into the deed of trust lien in favor of the plaintiff; that the amount of taxes so paid became an integral part of the obligation covered by the deed of trust; and that under the circumstances, as well as the understanding of the parties, the plaintiff, by the payment of such taxes, became subrogated to the tax liens.

That of the sum paid for taxes, about $221.11 thereof was paid to the Eastland Free School Corporation after said agency had foreclosed a tax lien against the appellants on said property, and securing a tax deed thereto; that this sum was paid to the school district to procure a deed, or reconveyance of said property to the defendant Wood in order to clear the title to the property in question. That in this respect the Loan Association in advancing this amount became entitled not only to the tax lien, but a vendor's lien on the property in controversy.

(3) That the Loan Association was an innocent purchaser of said property; that without knowledge of the alleged simulated nature of the original transaction between Overbey and the appellants, it made the loan and advanced this money to said Overbey, relying implicitly on the genuineness of the deed made by them to him; that the appellants knew at the execution and delivery of said deed that it would be used by Overbey for the purpose of transferring title, or creating liens on said property.

The association further alleges that if Wood and wife did not intend by the execution and delivery of the general warranty deed to the defendant Overbey to divest themselves of title to said property, and if such transaction was in fact simulated for the purpose of obtaining a loan on their homestead, nevertheless having executed and delivered the deed to Overbey knowing that he would in pursuance of said scheme tender said deed as a part of his title which he expected to offer as security to the plaintiff, or others similarly situated, who might make a loan on the property, and having knowingly accepted the benefits of the funds advanced by the plaintiff association to the defendant Overbey, a substantial part of which went to

pay taxes and improvements on said property, said appellants Wood and wife are now in good conscience estopped from seeking to set aside their deed to Overbey, Overbey's deed of trust to the association, and the trustee's deed to it.

It thus appears that the appellants' attack on the title of the Building & Loan Association is that the conveyance from Wood and wife to Overbey was simulated and fictitious, and that the deed was executed to enable them to procure a loan on the homestead, as was well known to appellee; that their deed and the deed of trust by Overbey to the association were therefore void because the property involved was homestead.

█ The undisputed testimony is that Overbey applied to the association for a loan on the property which he represented he was purchasing from the appellants. He made the application in writing, and after the transaction passed through the regular procedure, inspection of property, approval of loan, title examination, etc., the loan was granted to the extent of $1,500, plus an additional amount not to exceed $500, required to be spent by way of improvements on the property. The improvements cost $306.77, and hence the loan actually contracted for and made amounted to $1,806.77. To secure this, Overbey and wife executed a deed of trust against the property when the deals were consummated. It is further undisputed that Wood and wife had theretofore executed and delivered to Overbey a general warranty deed to the property reciting $3,000 consideration paid. The same was recorded and regularly brought into the abstract of title to the property tendered by Overbey to the loan company as a basis for the loan. Supplementing these facts, the jury, in response to proper issues, found: (1) That Overbey represented to the Building & Loan Association that he was purchasing the property; (2) that the officers and directors of the association believed such representations; (3) that they relied upon the same; (4) that they would not have made the loan in question had they known that Overbey was not purchasing such property; (5) that Wood and wife knew, when they executed and delivered the deed, that Overbey intended to use the deed for the purpose of showing title in himself; and (6) that the officers and directors of the association relied upon such deed as being what it appeared to be on its face.

An examination of the record discloses that there are pleadings and testimony to support these findings. Upon them the Build-

ing & Loan Association, as appellee, makes the contention that the appellants are now estopped to assert that the sale of the property to H. C. Overbey, as evidenced by their general warranty deed, was simulated. We sustain this contention, and hold that under the circumstances, the appellants will not now be permitted to deny the genuineness of the transaction wherein they executed and delivered the deed of conveyance to said Overbey. They thereby clothed their vendee with the power to commit a wrong against the legal right of the association, and having profited from the proceeds of the act, they will not be permitted to escape the legal consequences. The rules of law and equity applicable to such state of facts are clearly set forth in the following authorities, and others cited therein: Guaranty Bond State Bank v. Kelley (Tex. Com. App.) 13 S.W.(2d) 69, 71; National Bond & Mortgage Corp. v. Davis (Tex. Com. App.) 60 S.W.(2d) 429, 434; Barron v. Theophilakos (Tex. Civ. App.) 13 S.W.(2d) 739, 742; Eylar v. Eylar, 60 Tex. 315; Ramirez v. Bell (Tex. Civ. App.) 298 S. W. 924; Heidenheimer Bros. v. Stewart, 65 Tex. 323; Sanger v. Calloway et ux. (Tex. Com. App.) 61 S.W.(2d) 988.

The Kelley Case first cited above presents a state of facts similar to those in the instant case. Kelley and wife conveyed their homestead to Mrs. Kelley's father, who negotiated a deal with the bank. After the deal was consummated, the father reconveyed the property to the Kelleys who assumed the indebtedness thus created. When suit was filed to foreclose the lien, the Kelleys pleaded that the sale was simulated and made for the purpose of creating the lien upon the homestead. The bank pleaded estoppel and upon the testimony the court sustained the plea. Among other things, the court said: "It was suggested in the arguments that Mrs. Kelley could not be estopped by anything short of an actual fraud affirmatively committed by her, and it is argued that the fraud of the husband, who consummated the deal with the bank, could not be imputed to her. The principles thus contended for are sound; but that fraud which will estop a married woman is not necessarily intentional fraud, but rather any intentional affirmative act of hers which operates as a legal fraud, whether so intended or not, will estop her. Here Mrs. Kelley contributed in an active, affirmative way, to the perpetration of a legal fraud. Her intentions may have been, and no doubt were, perfectly harmless and with no actual purpose to wrong any one. But in law her conduct amounted to an affirmative representation that she and her husband had, in good faith, conveyed the homestead and reserved the lien thus assigned to the bank. To permit her now to plead the invalidity of the transaction would be to permit a legal fraud. Having actual notice of the execution of the deed retaining the lien, the measure of plaintiff in error's diligence was complete, and it was under no obligation to make further inquiry of defendants in error. It is ill-becoming defendants in error to insist that the bank, to whom they have thus represented that a sale of their home has been made, should make further inquiry of them or either of them if the transaction had been in good faith. The bank had a right to rely upon the truth of the facts thus represented to it. The principle is settled in Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, wherein it was held that one who innocently had made false representations inducing another to act would not be heard to say that such other should have pursued the inquiry by the means at hand to ascertain the falsity of the representations."

The same question of law arose upon a similar state of facts in the case of Barron v. Theophilakos. The entire opinion is especially applicable to the facts of this case, but in part we quote therefrom as follows: "The facts do not exactly fit appellants' contention. The deed conveying the property to the defendants Theophilakos and O'Brien was delivered to said defendants, and was exhibited to intervener, Popham, when he was by said defendants solicited to make the loan. When the deed and deed of trust were exhibited to intervener, Popham, he refused to close the loan until they were filed for record and were carried into the abstract of title to the property. Appellants' contention that, because they were in possession of the property after they had deeded the same to defendants Theophilakos and O'Brien, and were so at the time the loan was made and the deed of trust executed served as notice to intervener, Popham, of their homestead claim and rights, cannot be sustained. A purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title when he finds on the record in the county where the property is located a deed from such vendor conveying the title to said property properly acknowledged and recorded."

A plea of estoppel was also sustained upon similar facts in the case of National Bond & Mortgage Corp. v. Davis, supra. That is an able opinion by Judge Sharp in which the rules of law and equity applicable in such cases are clearly discussed and applied. He

cited many leading authorities on the point which are applicable here, and from the case of Heidenheimer Bros. v. Stewart he quoted: " 'If the owners of the homestead simulate a transaction, in which a negotiable note would be secured by a valid and meritorious lien on the exempt estate, and their artifice succeeds in imposing upon an innocent party, they are estopped from denying the truth of their solemn statements, and cannot be permitted to prove that a lien their acts declared to be valid is void because their acts were false.' The foregoing rule has been repeatedly upheld by the courts of this state, and when the facts justify it the rule will be applied and enforced."

Upon the foregoing authorities and conclusion, the judgment of the trial court in favor of appellee is fully warranted.

 Upon another ground the judgment may well be sustained. Whatever the nature of the transaction between Wood and Overbey, there is and can be no dispute under the testimony that a substantial part of the funds advanced by the Building & Loan Association went to pay up delinquent taxes owed by Wood on the property to the state, county, school, and city, and thus clear his title as a prerequisite to the consummation of the three-cornered deal. The understanding with Overbey was that the title was to be cleared of said incumbrances, and they were so cleared. After the funds of appellee paid these taxes and it became subrogated to the rights and liens accompanying them, then beyond question there is presented a situation calling for the application of the rule of law employed by our Supreme Court in W. C. Belcher Land Mortgage Co. v. Taylor, 212 S. W. 647, and followed by this court in Chambers & Co. v. Little, 21 S.W.(2d) 17, writ denied.

That rule is that a sale, made under deed of trust for a sum larger than the amount with which the property is properly chargeable, is not void, and a power of sale in such deed can be exercised if any part of the debt is due and owing at time of sale. The application of that rule to the facts of this case as they relate to the payment of taxes, etc., requires the affirmance of the judgment in any event. There is some contention made at the trial of the case, and now, that the payments on the loan in the instant case equaled, or exceeded, the delinquent taxes so paid, and that no part of such advancement for that purpose remained to support the sale under the deed of trust at the time the sale was made. We have examined the testimony and hold this contention without merit. Hence, if it be conceded that the sale was made under the deed of trust for a sum larger than the amount with which the property was properly and legally chargeable, nevertheless the deed is not void, for the power of sale in the deed of trust could be exercised if any part of the debt was due and owing. In addition to the two cases above cited, see Groesbeeck v. Crow, 85 Tex. 200; 20 S. W. 49; Hemphill v. Watson, 60 Tex. 679; Word v. Colley (Tex. Civ. App.) 143 S, W. 257; Vaughn v. Mutual Building Ass'n (Tex. Civ. App.) 36 S. W. 1013.

By the above conclusions, we overrule a series of propositions to the effect that there was either no evidence, or insufficient evidence, to support the verdict and the judgment. Further, we find the testimony sufficient in all respects to establish the plea, of estoppel, as well as the further fact that the Building & Loan Association was an innocent purchaser for value at the time the loan was consummated and the deed of trust lien on the property accepted.

The appellants tendered a large number of special issues which were refused by the trial court. We have carefully examined each of them and conclude that the trial court committed no error in so doing. Some of the issues were comprehended in the issues submitted by the court, some were evidentiary only, and others were, in our opinion, wholly immaterial under the facts of this case. The issues that were submitted and answered by the jury were controlling and dispose of the case in favor of the appellee.

██ The proposition asserting prejudicial nature of certain argument of appellee's counsel is overruled. The court by instruction to the jury removed the prejudicial nature, if any, of the statements. Further, the point was not raised in motion for a new trial. Phillips Pet. Co. v. Booles (Tex. Com. App.) 276 S. W. 667.

To go into detail in the discussion and disposition of each of the many questions sought to be raised would unduly extend this opinion, and we content ourselves with the preceding discussion of what we deem the controlling questions. We have carefully considered each of the points presented, and given a direct ruling thereon.

For the reasons assigned, the judgment of the trial court is in all things affirmed.